## GEORGE W. HILTON

*vs.*

## PHOENIX ASSURANCE COMPANY OF LONDON.

### York.    Opinion December 20, 1898.

*Insurance. Non-occupancy. Proof of Loss. Waiver. False Swearing. Forfeiture. Damages. R. S., c. 49, §§ 20, 90.*

In an action upon an insurance policy, submitted on report to the law court with jury powers, it appeared that the house insured and burned was unoccupied at the time the policy was issued and remained so ever after; and it was described in the policy as "occupied by assured." Another house insured by the same policy was described as "occupied by the assured as a residence."

The court being satisfied by an examination of the evidence that the fact of non-occupancy was known to the defendant's agent who issued the policy, *held;* that by force of the statute, (R. S., c. 49, § 90,) the agent's knowledge must be deemed to be the knowledge of the defendant, and that all misdescriptions known to the agent must be regarded as waived by the defendant; and that the policy was not void by reason of false representations respecting occupancy.

The house being unoccupied at the time the policy was issued, and that fact being known to the agent, *held;* that the policy is valid.

The defendant in acknowledging the receipt of the proof of loss made no objection to it for want of form or omission of certificate of magistrate, but did object on other grounds. *Held;* that there was sufficient evidence of a waiver of informalities or omissions in the proof of loss.

Where the plaintiff can neither read nor write, and there was a misstatement as to occupancy in his proof of loss which was the mistake of the scrivener who prepared the proof, and it did not appear that the misstatement was intentionally made by the plaintiff, *held;* that the policy was not avoided.

To knowingly and intentionally overestimate a loss, either in items or amount, in a sworn proof of loss is false swearing and is fraudulent, and bars a recovery; but a misstatement honestly made, or a mistake of judgment or memory differs from one which is knowingly and intentionally false. While the plaintiff greatly overestimated the amount of his loss he apparently proceeded upon the theory that he was entitled to have money enough to replace the burned buildings, and that this was the measure of his loss. *Held;* That this was error, but not so uncommon an error as to justify the court in saying that the mere fact that the owner has committed such an error is sufficient evidence of intentional false swearing.

The true measure of damages is not what it would cost to replace the burned buildings with new ones, but it is the value of the buildings themselves, as they stood upon the land just before the fire.

ON REPORT.

In this action the plaintiff sought to recover from the defendant company under a policy of insurance issued to him, insuring him from loss and damage by fire on certain premises in Wells. The writ is dated August 8, 1894, and the action was made returnable to the September term in York County.

The policy of insurance covered two dwelling-houses; the plaintiff claims to recover for a loss sustained on the dwelling-house and L No. 2, insured for $800, the barn insured for $700, and hay therein insured for the sum of $200. The policy is dated September 4th, 1889, and it expired at twelve o'clock noon on the 4th day of September, 1892. The plaintiff claimed that the house, barn and hay were destroyed by fire on the first day of September, 1892, at about the hour of twelve o'clock midnight. The policy expired within two or three days after the date of the fire.

The written portion of the · policy relating to the buildings claimed to have been destroyed reads as follows:   "$800 on frame dwelling-house and L No. 2.   $700 on frame barn situate about 100 feet from said dwelling, and $200 on hay therein.   Situate in School Dist. No. 6, Wells, Me., and also occupied by the assured."

The first printed condition in the policy provides that the policy shall be void if " any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or an over-valuation, or any misrepresentation whatever, either in a written application or otherwise; . . . . or if the above mentioned premises shall be occupied or used so as to increase the risk, or become vacant or unoccupied, and so remain without notice to, and consent of, this company in writing . . . . endorsed hereon."

Printed condition 9 in the policy requires that persons sustaining loss or damage by fire shall forthwith give notice of loss to the company, and shall within thirty days render a particular account of such loss, signed and sworn to by them, setting forth certain

particulars named in said 9th condition, and provides that the assured shall also produce a certificate under the hand of a magistrate or a notary public nearest the place of the fire. It is also a condition of the policy that "all fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy."

The proof of loss filed by the plaintiff with the defendant company, bears date of October 11th, 1892, was not accompanied by a certificate of a magistrate or notary, but has a certificate certifying to certain matters, signed by a deputy sheriff, under date of October 17th, 1892, and which was later in October filed with the company. The plaintiff claimed in this proof of loss that the buildings destroyed were occupied by him as a residence and for his stock of cattle, hay, etc., and that there was a total loss to the extent of $2,875; $1,700 thereof being the value of the house and L; $1,100 the value of the barn, and $75 for hay; and he made claim for the entire amount of the insurance on the house and barn, and for $75 loss on hay.

In November, 1892, Mr. C. M. Slocum, the general agent of the defendant company, notified plaintiff that the proof of loss could not be accepted or recognized by the company as evidence of claim under the policy; and that if the property mentioned in the policy had been burned the company did not recognize or admit any liability therefor; and further stated that the house had been unoccupied at least sixty days prior to the time of the fire, and called plaintiff's attention to the conditions of its policy. The company claimed that this was a denial of all liability under the policy.

Under date of June 12, 1893, and nearly seven months after this notice from Mr. Slocum, plaintiff signed a written statement under oath, directed to the defendant company, and in which he stated: "That said dwelling-house at the time of said fire was occupied by me not as a residence." Plaintiff in his proof of loss, stated that the buildings in question were occupied by him as a residence, and does not deny this in his statement of June 12, 1893, but claimed that they were occupied by him, though not as a

residence, but as occasion might require; and he admitted in his statement that at the time of the fire, no person was living in the said buildings. The company thereupon claimed that this last statement filed by the plaintiff plainly shows he fully understood the policy was avoided if the buildings were unoccupied, and the inference intended to be conveyed by this statement as well as by his proof of loss, was that the buildings were occupied in compliance with the terms of the policy.

The plaintiff claimed that Mr. George F. Plaisted acted as the agent of the defendant company in the matter of the issuance of the policy, and put in testimony of certain conversations between plaintiff and Mr. Plaisted. But on the other hand, the defendant claimed such conversations were between the plaintiff and his own broker, who was not an agent of this defendant company.

Other facts appear in the opinion.

*Geo. F. Haley,* for plaintiff.

*N. & H. B. Cleaves and Stephen C. Perry,* for defendant.

Agency: In *Pottsville Mut. Fire Ins. Co.* v. *Minnequa Springs Improvement Co.,* 100 Penn. St. R. 137, it is said that: "It is the well settled law that where one engages another to procure insurance for him, the person thus employed is the agent of the employer, and not of the company." *Standard Oil Co.* v. *Triumph Ins. Co.,* 64 N. Y. 89; May on Insurance, 3rd Ed. § 122; *Richmond* v. *Phœnix Assurance Co.,* 88 Maine, 107.

Occupied as a dwelling or residence: *Agricultural Ins. Co.* v. *Hamilton,* (Md.) 30 L. R. A. 633; *Hanscom* v. *Ins. Co.,* 90 Maine, 333; *Ashworth* v. *Ins. Co.,* 112 Mass. 422; *Keith* v. *Quincy Mut. Ins. Co.,* 10 Allen, 228.

Vacant buildings: *Jones* v. *Granite State F. Ins. Co.,* 90 Maine, 40; *Lancy* v. *Home Ins. Co.,* 82 Maine, 492; *White* v. *Phœnix Ins. Co.,* 83 Maine, 279, S. C. 85 Maine, 97.

Agent's knowledge: May on Ins. 3d Ed. § 122; *Richardson* v. *Maine Ins. Co.,* 46 Maine, 394; *Ryan* v. *World Mut. L. Ins. Co.,* 41 Conn. 168; *N. Y. L. Ins. Co.* v. *Fletcher,* 117 U. S. 519.

Fraud and false swearing: *Atherton* v. *Assurance Co.,* 91 Maine, 289; *Dolloff* v. *Ins. Co.,* 82 Maine, 266; *Williams* v. *Ins.*

*Co.,* 61 Maine, 67; *Barnes* v. *Un. Mut. F. Ins. Co.,* 51 Maine, 110; *Linscott* v. *Ins. Co.,* 88 Maine, 497; *Marston* v. *Ins. Co.,* 89 Maine, 266; *Dumas* v. *North Western Natl. Ins. Co.,* 40 L. R. A. 358.

SITTING: PETERS, C. J., HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

SAVAGE, J. Action on policy of fire insurance, dated September 4, 1889. The case comes to us on report. It is conceded that the policy was issued and the premium paid, and that the property was destroyed by fire September 1, 1892, within the life of the policy. The policy covered two sets of buildings, and other property. The property burned with the insurance upon it is described in the policy as follows: "$800 on frame dwelling-house and L; $700 on frame barn situate about 100 feet from said dwelling, and $200 on hay therein; situate in School District No. 6, Wells, Me., and also occupied by insured." In a previous part of the policy, another dwelling-house, also insured, was described as "occupied by assured as a residence."

The dwelling-house burned was unoccupied at the time the policy was issued, and remained unoccupied as a residence ever after. The barn during the life of the policy was used only for storing tools and hay. The policy was procured of defendant's agent at Kittery, by one Plaisted, a broker, who acted as agent for the plaintiff. October 22, 1892, the plaintiff furnished to the defendant a written proof of loss signed and sworn to by him, in which he stated that his loss on the house was $1700, on the barn $1100, and on hay $75; also, that the buildings were occupied at the time of the fire, "by the assured as a residence and for his his stock of cattle, hay, etc." November 19, 1892, the defendant, by letter, acknowledged the receipt of the proof of loss, but also stated "that such alleged proof of loss is not accepted or recognized by this company as evidence of a claim under said policy, nor if the property mentioned therein has been burned, does this company recognize or admit any liability therefor." In the same letter, the

defendant also said, " Would state in explanation of above, that notwithstanding your statement that the house was occupied by you as a residence, we have, we think, good evidence that it was unoccupied at least sixty days previous to the fire. If you will read the conditions of your policy, you will find that makes it null and void." June 12, 1893, the plaintiff gave the defendant notice in writing, under oath, that the statement in the proof that the house was occupied by him as a residence was a mistake made by the person who prepared the proof of loss, and asked that the correction might be made a part of the original proof of loss. The plaintiff also stated that " the dwelling-house at the time of the fire was occupied by me not as a residence, but as occasion might require my attendance at the farm upon which the buildings were situated, no person at the time of said fire living therein, the furniture therein being such as I used when I stopped upon said farm." No reply was made by the defendant.

The defendant sets up non-occupancy as one ground of defense, and relies upon a condition in the policy which provided that it should be void if there was any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or if the premises should become vacant or unoccupied. So far as the last clause of this condition is concerned, it cannot be said that the house *became* unoccupied, because it is undisputed that it was unoccupied when the policy was issued. There was no material increase of risk on this ground.

But the defendant contends that the house was insured as an occupied house, that it was so described in the policy, that the proper signification to be attached to the word " occupied " in the policy is " occupied as a residence." The defendant insists that it had no knowledge that the house was unoccupied, and that the policy was procured by the false representations of the plaintiff or his agent. On the other hand, the plaintiff says that the fact of non-occupancy was well known to the defendant's agent who issued the policy; and that by force of the statute, R. S., ch. 49, § 90, the knowledge of the agent must be held to be the knowl-

edge of the company, and all omissions and misdescriptions known to the agent must be regarded as waived by the company.

The defendant's agent is a witness, and he testifies that he understood from the plaintiff's agent that all the premises covered by the policy were occupied, although he admits that something was said about one of the houses being unoccupied for a portion of the time, "simply temporarily," but not for any special length of time. Further on he testifies that he understood the house was occupied as a residence. Though he admits that he understood one of the houses was to be unoccupied part of the time, he says he can give no reason why it was not so stated in the policy. In reply to a question, to what extent the house was to be unoccupied, he replies: "I don't know as I can quite recall as to the time; *there was something said about his work, whether it was for haying, or whether it was to be occupied for haying time only,* or all except haying time, I can't say, but there was some question in regard to it which as I have already said that was to be unoccupied; the understanding was one of the houses was to be unoccupied temporarily." This testimony was given about eight years after the event, which of itself may afford some reason for want of a definite recollection. If, as he suggests it may have been, it was to be "occupied for haying time only," this would not be wholly unlike the claim of the plaintiff, that it was occupied only as occasion might require his attendance at the farm. However this may be, on September 5, 1889, the very next day after the date of the policy, in a letter in which he enclosed the policy to Mr. Plaisted, the defendant's agent said, "You will observe I have written it all in one policy, and at the same rate. Ordinarily we do not care for unoccupied buildings at any rate, but I've no doubt this is O. K., hence I have tried to do the best I could for your client. Better hold the policy for a few days to see if the company kicks on it." This letter was written while the matter was fresh in the recollection and understanding of the writer. There is no suggestion in it of temporary non-occupancy. It is evident that the writer had in mind two sets of buildings, one occupied, the other unoccupied. He has put them both into one policy, at the same rate,

doing the "best" he could for Mr. Plaisted's client. He seems to have doubted whether this would be acceptable to his company, for he advises Plaisted to "hold the policy for a few days to see if the company kicks on it." This agent in his testimony explained that this last clause in his letter had reference to its being a "farm risk," but we think that, taking the letter as a whole, it appears clearly that he feared the company might "kick" on the fact of non-occupancy. There is much more ground for saying that this defendant was deceived by its agent, than there is that the agent was deceived by the plaintiff or Plaisted. Though he had never seen the plaintiff or the premises, the agent reported to his company, September 4, 1889, that he had personally examined the premises "a few days since." He seems to have been anxious to have the policy issued, and, perhaps, to receive his compensation.

We must hold that this agent's knowledge was, in law, the knowledge of the defendant. *Day* v. *Dwelling-House Ins. Co.*, 81 Maine, 244, and· that the policy was not void by reason of false representations respecting occupancy.

The defendant contends in the next place that the plaintiff must fail because his proof of loss was not accompanied by the certificate of a magistrate or a notary public nearest the place of fire, as required by the policy, nor by such a certificate as is required by statute, R. S., ch. 49, § 20. The plaintiff strictly complied with neither requirement. His proof was sworn to, and he furnished the certificate of a deputy sheriff. But the proof of loss, such as it was, was received by the defendant. No objection was made for any want of form or omission of certificate. The defendant did specify other matter as a reason why it refused to recognize the proof, or its liability, namely, non-occupancy. We think these facts, without further explanation, afford sufficient evidence of a waiver on the part of the defendant, of informalities or omissions in the proof of loss. *Bailey* v. *Hope Ins. Co.*, 56 Maine, 474; *Patterson* v. *Triumph Ins. Co.*, 64 Maine, 500; *Biddeford Savings Bank* v. *Dwelling-House Ins. Co.*, 81 Maine, 566.

The policy provides that "all fraud or attempt at fraud, by false swearing or otherwise shall cause a forfeiture of all claim on this

company under this policy." The defendant urges that the plaintiff in his proof of loss has sworn falsely, both as to the occupancy of the house, and the amount of his loss; and that a recovery should be barred thereby. It is not enough in this respect that the plaintiff's statements in his proof should be shown to be untrue, but they must be shown to be knowingly and intentionally untrue. *Dolloff* v. *Phœnix Ins. Co.*, 82 Maine, 266; *Atherton* v. *British America Assurance Co.*, 91 Maine, 289.

If the plaintiff understood, and we think he did, that the house was insured as unoccupied, we can see no good reason why he should intentionally misrepresent the fact of non-occupancy, particularly when the falsehood was certain to be detected upon the slightest inquiry. The plaintiff can neither read nor write. He testifies that the mistake was that of the person who made up the proof of loss. He corrected the mistake long before this action was brought. In the absence of any evidence that the company was prejudiced by the misstatement, we think it ought not to operate as a forfeiture.

That the plaintiff overestimated his loss, we think is true. The defendant does not claim that he misstated the items of property destroyed, the house, the barn, the hay, or their condition and situation, but that he knowingly overestimated their value and his loss, in making his sworn proof of loss. To knowingly and intentionally overestimate a loss, either in items or amount, is a fraud, but like all other frauds it must be proved. It cannot be presumed or surmised. A misstatement honestly made, or a mistake of judgment or memory differs from one which is knowingly and intentionally false. *Linscott* v. *Orient Ins. Co.*, 88 Maine, 497. The latter is fraudulent, the former not. A careful examination of the evidence fails to satisfy us that the fraudulent element has been proved in this case.

Preparatory to making his proof of loss, the plaintiff procured estimates from carpenters of what it would cost to replace the burned buildings with new ones, and he made his proofs in accordance with those estimates. He seems to have assumed that he was entitled to have money enough to replace the buildings so far,

at least, as the insurance would do it.    This was error, but not so uncommon an error in the practical affairs of life as to justify us in saying that the mere fact that the owner has committed such an error is sufficient evidence of intentional false swearing.    *Williams* v. *Phœnix Fire Ins. Co.*, 61 Maine, 67.

It remains for us to estimate the amount of the plaintiff's loss. This is a question which should have been submitted to a jury. The evidence necessarily consists of the opinions of witnesses. Very much depends upon their intelligence and credibility, and glean as well as we may from the cold printed page, we cannot be sure that we are able to distinguish those to whom most credit should be given.    A jury seeing and hearing them could judge better than we.    The witnesses estimate the loss all the way from $1700 for the house, and $1100 for the barn, (which is the same as claimed by the plaintiff in his proof of loss,) to $600 for both buildings.    The higher estimates are clearly made on a wrong basis,—what it would cost to replace the burned buildings with new ones.    The policy is a contract of indemnity merely.    *Donnell* v. *Donnell*, 86 Maine, 518.    The plaintiff is entitled only to have his actual loss made good.    The true measure of damages is the value of the buildings themselves, as they stood upon the land just before the fire.    2 Sedgwick on Damages, § 722.    These buildings, though apparently in a fair state of repair, were old, some of them very old.    They were no longer in use, but we cannot assume that they were useless.    Upon the whole, it is the opinion of the court that the plaintiff should be allowed to recover eight hundred dollars for the loss of his buildings.    He also lost five tons of hay, for which he should be allowed sixty dollars.    The policy provides that payment shall be made within sixty days after due notice and proof of loss shall have been made by the assured.    We think the plaintiff should recover interest after sixty days from the time he corrected his proof of loss, which was June 12, 1893.

> *Judgment for plaintiff for $860, and*
> *interest from August 11, 1893.*