CITIZENS' SAVINGS BANK & TRUST COMPANY *v.* FITCHBURG
MUTUAL FIRE INSURANCE COMPANY.

January Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed November 8, 1912.

*Petit Jurors—Qualifications—Interest—Fire Insurance Policy—*
*Coinsurance Clause—Business Property—Partial Loss—*
*Measure of Damages—Value of Property—Determination—*
*Rental Value—Net Income—Experts—Lister's Appraisal—*
*Argument of Counsel—Misconduct.*

In an action on a mutual fire insurance policy that was one of several
issued by different insurers on the same property, each policy con-
taining the ordinary coinsurance clause, the fact that certain of
the jurymen held mutual plan policies issued by one or the other
of the coinsurers was no disqualification to try the case, for they
were not interested in the event of the particular suit, since judg-
ment therein would not affect the liability of the other insurers.
Where there is coinsurance by separate policies issued severally, and
each containing the ordinary coinsurance clause, the contract of
each insurer is separate and independent, without any right of
contribution, and each insurer is bound to pay its proportion of
the loss, regardless of what may be paid by the others.
Where a fire insurance policy on a building provides that the insurer
shall not be liable beyond the actual cash value of the property
at the time of the loss, which shall be estimated according to the
actual cash value, with proper deduction for depreciation, however
caused, but shall not exceed what it would cost the insured to
repair or replace the property with material of like kind and
quality, the insurer is not entitled to have the loss conclusively
fixed by the replacement cost of the building, less its depreciation
while standing, for the stipulation as to the cost of replacement
is merely a limitation on the extent of the recovery, but the loss
is the actual cash value of the building destroyed, and that may
be established by any evidence having a legitimate tendency to
prove it.

In an action on a fire insurance policy, where the building insured is a total loss, the measure of damages is the value of the building where it stood just before the fire; its site, construction, and connection with the land being elements affecting its value.

While the income of a building cannot properly be made the measure of its cash value, such income should be considered in determining that value.

In an action on a fire insurance policy on a business building, evidence of the totals of classified expenses used in computing the net income, that a janitor was needed and that the amount paid him was reasonable, the cost of caring for the property, though that was done by an official of plaintiff in connection with other work and without extra pay, the rental value of the rooms occupied by · plaintiff, and a statement of what the receipts would have been, if that cost and rental had been included, was properly received as bearing on the value of the building.

In an action on an insurance policy on a business building, it was not error to ·receive the testimony of plaintiff's president, based on his experience as an owner of like property in the same village, that real estate of that character ought to pay at least six per cent. net on the investment.

In an action on a fire insurance policy on a business building, a witness who testified that he was acquainted with the building, and knew to some extent the rental value of like property, was properly allowed to testify as to the value of the building and lot and the value of each separately.

In an action on a fire insurance policy on a building, the quadrennial appraisal of the listers, showing their valuation of the building and lot, was admissible, in connection with other evidence, to show the value of the building.

In an action on a fire insurance policy on a building, where an issue was as to the value of the walls left standing, ·which plaintiff claimed were not worth using and should have been taken down, but which were in fact repaired and used, plaintiff was properly allowed to show in explanation that this method of rebuilding was adopted because it required less time, and that an early occupancy of the building was important to plaintiff's business.

In an action on a fire insurance policy on a building the value of which was in issue, where on cross-examination of plaintiff's treasurer, and to discredit his testimony as to the value of the building, defendant introduced applications for insurance by the witness,

placing the cash value of the land and building at $60,000, and the cash value of the land without the building at $15,000, he was properly allowed to testify on redirect examination that the $60,000 named in the first application included the lot; that his opinion as to the value of the building had been changed by the insufficiency of the income to make it a paying investment; that the valuation was ·reduced from time to time to $40,000 by charging off $5,000 a year; and that this was in accordance with his opinion as to the true value.

A defendant has the right to waive the submission to the jury of all questions except as to damages, and to have the argument confined to that issue.

In an action on a fire insurance policy, it was error requiring a reversal to allow plaintiff's attorney in argument to say to the jury: "I submit to you that every father and mother and every business man, whether he is of a large concern or of a humble concern, who knows about this law suit, is watching, is listening, and will inquire what the jury does with the insurance company."

In an action on an insurance policy containing the ordinary 80 per cent. clause, it was not an abuse of discretion for the court to refuse to take special verdicts showing the value of the property before and after the fire; but it was not necessary for the court to have the jury make the computation under that clause, as it was not involved in the ascertainment of the loss, and its application was for the court from an inspection of the contract, and the better practice is to confine the jury to the question of the loss and have the court make the calculation required by the coinsurance clause.

An exception to the denial of a requested instruction will not be considered on review where the record does not show the pertinency of some instruction on the matter covered by the request.

GENERAL ASSUMPSIT on a fire insurance policy. Plea, the general issue and notice thereunder. Trial by jury at the June Term, 1910, Caledonia County, *Waterman,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The defendant excepted to the refusal of the court to comply with the following requested instruction: "For the purpose of this·case, the value of the building in controversy at the time of the fire is what you find it would cost to construct such building in St. Johnsbury at the time, less such amount as you may allow

for depreciation in value from all causes during the time the building in controversy had been standing."

*Dunnett & Slack* and *Gross, Hyde & Shipman* for the defendant.

The quadrennial appraisal was improperly admitted. It was *res inter alios,* and the mere opinion of the listers for the purpose of taxation. *Flint* v. *Flint,* 6 Allen 34; *Kenerson* v. *Henry,* 101 Mass. 152; *Anthony* v. *New York etc. R. R.,* 162 Mass. 65; *Martin* v. *New York & N. E. R. Co.,* 62 Conn. 343; *Concord Land etc. Co.* v. *Clough,* 45 Atl. 565; *Hanover Water Co.* v. *Ashland Iron Co.,* 84 Pa. St. 279; *Hamilton* v. *Seaboard etc. R. R. Co.,* 150 N. C. 193; *McLain* v. *Pachal,* 74 Texas 26; *Texas etc. R. R. Co.* v. *Eddy,* 42 Ark. 527; *Savannah etc. R. R. Co.* v. *Buford,* 106 Ala. 303; *Birmingham Mineral R. R. Co.* v. *Smith,* 89 Ala. 305; *Ala. Mineral Land Co.* v. *County Commissioners,* 95 Ala. 105; *City of San Antonio* v. *Diaz,* 32 S. W. 549; *Ridley* v. *Railroad,* 124 N. C. 37; *Griffeth* v. *Johnson,* 1 Harrington 136; *Scott* v. *O'Neil's Admr.* 62 S. W. 1042; *Carper* v. *Resdon,* 76 Pac. 744; *Denver and Rio Grande R. R. Co.* v. *Heckman,* 45 Colo. 470; *Hildreth et al.* v. *City of Longmont,* 47 Colo. 79; *Fort Collins Development R. R. Co.* v. *France,* 92 Pac. 953; *Ripton* v. *Brandon,* 80 Vt. 234; *Brown* v. *Providence etc. R. R. Co.,* 5 Gray 40. The same rule was laid down in *Hubbard* v. *Moore et al.,* 67 Vt. 532, where a tax inventory was admitted to show a list of debts and liabilities as it was made by one of the partners and was in the nature of an admission.

*Joseph Fairbanks* and *Howe & Hovey* for the plaintiff.

The quadrennial appraisal was properly admitted. 3 Wig. Ev. §1640; 1 Greenl. Ev. 484 and 493; *City of Worcester* v. *Town of Northborough,* 140 Mass. 397; *Buckley* v. *U. S.,* 45 U. S. 251; *Rokendorff* v. *Taylor,* 4 Peters 349; *Dudley* v. *Chilton Co.,* 66 Ala. 593; *Pittsfield* v. *Barnstead,* 40 N. H. 477; *Grosbeck* v. *Seeley,* 13 Mich. 329; *Milo* v. *Gardiner,* 41 Me. 549. Defendant's requested instruction was properly refused. It made reconstruction value the sole test of cash value. In *Brinley* v. *National Ins. Co.,* 11 Met. 195; the court said, "There is no other rule of

damages in an action on a policy of insurance against fire, where the insured building is totally destroyed, except that of an indemnity to the insured for his actual loss, and in estimating that loss there is no settled rule of deduction from the estimated cost of a new building for the difference between the value of the new and the old one. *Aetna Ins. Co.* v. *Johnson*, 74 Ky. 587, 21 Am. Rep. 223; *Hilton* v. *Phoenix Assur. Co.*, 92 Me. 272, 42 Atl. 412; *Burkett* v. *Georgia Home Ins. Co.*, 105 Tenn. 548; *Planters Mut. Ins. Co.* v. *Rowland*, 66 Md. 236, 7 Atl. 257.

MUNSON, J.    The suit is upon a fire insurance policy of standard form containing the eighty per cent. coinsurance clause. There were ten other policies on the property in ten other companies. It was provided in each of the policies that the company issuing it should not be liable for any loss in a proportion greater than that which the amount of such policy bore to the entire insurance. Among the companies carrying the insurance were the Vermont Mutual and Union Mutual companies of Montpelier. Ten of the jurymen who tried the case held mutual plan policies in one or the other of these companies. The defendant claimed they were disqualified by reason of this fact.

The interest which disqualifies is a pecuniary interest. *State* v. *Sutton*, 74 Vt. 12, 52 Atl. 116. These jurors were not interested in the event of the suit, unless the companies of which they were members would be affected by the judgment through the apportionment clause contained in all the policies. This clause has been the subject of numerous adjudications; and it is held with substantial unanimity that the amount paid by one company, whether in settlement or on judgment, in no way affects the liability of the other companies. The contracts of the several companies are entirely separate and independent of one another. There is no concurrent liability and no right of contribution. Each company binds itself to pay its proportion of the loss without any reference to what may be paid by the others. Clement, Fire Ins. 307; *Hanover Fire Ins. Co.* v. *Brown*, 77 Md. 64, 25 Atl. 989, 27 Atl. 314, 39 Am. St. Rep. 386; *Bardwell* v. *Conway Ins. Co.*, 118 Mass. 465; *Fitzsimmons* v. *City Fire Ins. Co.*, 18 Wis. 236, 86 Am. Dec. 761; *Lucas* v. *Jefferson Ins. Co.*, 6 Cow. 635.

The various exceptions taken to the admission of evidence offered by the plaintiff to show the amount of the loss cannot well be considered in detail without some previous reference to the claims made and the positions taken regarding the method of ascertaining the loss. The defendant contended, as shown by its request to charge, that the value of the building at the time of the fire was what it would cost to construct such a building in St. Johnsbury at that time, less the amount of the depreciation in value of the building destroyed, from all causes, during the time it was standing. The court instructed the jury that the real estate loss might be determined either ''by finding the actual cash value of what remained after the fire and deducting that from the actual cash value of the building before the fire, or by estimating the damage from the evidence'' before the jury—''the evidence of witnesses of what the loss was.'' The plaintiff introduced without objection a statement of the gross and net income of the building for the three years preceding the loss. The plaintiff was then permitted to introduce under exception, in support of this statement, evidence of the expense of maintaining the building during these years, covering the items of taxes, water rent, lights for the halls, insurance, fuel, repairs, janitor, miscellaneous expenses, and a charge for managing the property. The plaintiff also introduced the opinion of a witness that a fair rental for that part of the building occupied by the plaintiff itself would have been from ten to twelve hundred dollars, and evidence of what the average net income of the building had been for the past thirteen years, allowing twelve hundred dollars a year for the use of the banking rooms. The plaintiff also introduced the opinion of a witness as to the fair cash value of the building at the time of the fire.

The plaintiff's policy provides that the company shall not be liable beyond the actual cash value of the property at the time of the loss, and that the loss shall be estimated according to the actual cash value with proper deduction for depreciation however caused, but shall not exceed what it would then cost the insured to repair or replace the property with material of like kind and quality. The rule now formulated by the defendant in its request would arrive at the cash value of the building destroyed by a process based on the cost of constructing a new one. The only specific objection made to this request by the plaintiff

is that it limits the jury to one method of determining the value of the building.   The proposed rule makes the cost of constructing a new building the basis of ascertainment, and lessens this by the depreciation in the value of the old building from all causes. The method of arriving at the depreciation is correct, but the result is not applied as contemplated by the contract.   The policy makes the cash value of the building destroyed the basis of ascertainment, taking into account its previous depreciation from all causes; and makes the cost of present construction a mere limitation upon the extent of the recovery.   The cost of a new building may limit the recovery, but cannot be made a controlling factor in the conduct of the inquiry.   The cash value of the building destroyed is the fundamental fact to be established, and any evidence which has a legitimate tendency to prove that fact is admissible.

The question is whether proof of rental value is legitimate evidence to establish the actual cash value of a building.   It is held by good authorities that the true measure of damages in the case of a total loss is the value of the building as it stood upon the land just before the fire.   2 Sedg. Dam., §722; *Hilton* v. *Phoenix etc. Co.*, 92 Me. 272, 42 Atl. 412.   This recognizes the connection of the building with the land as an element affecting the value of the structure.   The lot and the building are parts of an entire property, and neither can be given a separate value without considering its relation to the other.   Other matters which enter into the problem of value are the site and construction of a building considered with reference to existing local demands.   The location of a building and the purpose for which it is constructed may call for instructions having reference to these conditions, and may justify the admission of evidence specially adapted to a particular class of cases.   The considerations affecting the value of a family residence and of an apartment house or office building are not entirely the same.   But these suggestions do not justify the conclusion that the rule is anything different from that stated.   It is evident that the income of a building cannot be made the measure of its cash value.   The rents received from the tenants of a building are earned in part by the land on which it stands, and a determination of the value of the building on the basis of its income would give it an increased value because of a property interest not insurable and

18

not affected by the loss. An old building may be kept in a state of repair sufficient to secure its continued occupation at the same rental without preventing or making good the gradual deterioration of the property. On the other hand a building bringing in no income and put to no use is property of value, and the local conditions bearing upon the probability of its coming to profitable use would be material considerations in fixing its value. While the net income of a rented building cannot be accepted as the measure of its actual cash value, we think it may be shown in evidence as an aid in determining the value.

Our conclusion that evidence of the rental value of this property was admissible as bearing upon the question of the actual cash value of the building, practically disposes of many of the exceptions taken to the admission of evidence.

It was proper to receive the totals of the classified expenses used in arriving at the net income, and evidence that a janitor was needed and that the amount paid him was reasonable. It was not error to include in this showing evidence of what it was worth to care for the property, although the work was done by an official of the plaintiff in connection with his other work for the plaintiff, and without an extra allowance for the service. It was equally permissible to receive evidence of the rental value of the rooms occupied by the plaintiff, and a statement of what the receipts would have been if the amount testified to had been included. The value of the property was to be arrived at by a showing of the rents earned and the costs properly chargeable against the rents. The legitimate probative effect of the evidence as a whole was not destroyed by the facts made the ground of objection. The entire situation was for the consideration and judgment of the jury in its bearing upon the question of valuation.

It was not error to receive the testimony of plaintiff's president, based on his experience as an owner of like property in St. Johnsbury, that a piece of real estate of this character ought to pay at least six per cent. net on the money invested. The statement was not what it ought to pay as an independent proposition, but what it ought to pay judging by what other property of that class did pay. It was one way of presenting the judgment of the witness as to the probable income of the property; in other words, his opinion as to its rental value.

A witness who testified that he was acquainted with this building, and knew to some extent the rental value of like property, and had informed himself of the rental value of this property, was permitted to give his opinion as to the value of the building and lot and the value of each separately. This was received against the defendant's objection that the judgment of the witness was based upon what some one had told him. The same situation was presented in *Lamoille Valley R. R. Co.* v. *Bixby,* 57 Vt. 548, and it was there held that the Court could not say as matter of law that it was error to receive the testimony.

The quadrennial appraisal of the listers was received to show their valuation of the building and lot, and was objected to as not competent proof of the value of the building. Public documents which would otherwise be inadmissible for the purpose of the offer are often received to establish facts stated therein on the ground that they are made by public officers acting under oath and by requirement of law. A majority of the Court think that the listers' valuation of the building and lot was properly received to be considered in connection with other evidence in arriving at the value of the building.

The plaintiff claimed that some of the walls left standing were not worth using and should have been taken down, but they were in fact repaired and used. In explanation of this, it was proper for the plaintiff to show that an early occupancy of the building was important to its business, and that this method of rebuilding was adopted because it required the least time.

During the cross-examination of plaintiff's treasurer the defendant introduced three applications for insurance on the building in question, made respectively in 1898, 1903, and 1906, and all executed by the witness. The first of these placed the cash value of the land and building at $60,000, and the cash value of the land without the building at $15,000. In the second and third, the value of the property insured was given as $50,000. In re-direct examination the witness stated that the $60,000 named in the first application included the lot, and afterwards testified, subject to exception, that his opinion as to the value of the building was changed by the insufficiency of the income to make it a paying investment, and that the valuation was reduced from time to time to $40,000 by charging off $5,000 a year, and that this was in accordance with his opinion as to its value. The ap-

plications were evidently produced to discredit testimony previously given by the witness as to the value of the property, and a re-examination of this character was permissible to account for any inconsistencies that appeared between the applications and his direct testimony.

Before the arguments were had, the defendant waived its right to go to the jury upon any question except as to the damages. It appears that the case was tried on plea and notice, but there is nothing in the case to show whether there was any attempt to establish fraud. The attorney making the opening argument for the plaintiff started to make some statement about fraud; whereupon defendant's counsel said they did not claim that any fraud was established, and plaintiff's counsel replied, ''You claimed it in your answer.'' This was followed by a colloquy in which plaintiff's counsel made repeated references to what was set up in defendant's notice and to the number of claims of fraud contained in it, and defendant's counsel repeatedly took exception to the statements made. The court expressed a doubt as to the notice having much effect on the question of damages, but said that it was a part of the files, and that so far as it had any bearing on that question it was in the case, and allowed the defendant an exception if it was entitled to one, and directed that the argument proceed. As the case stands it is not necessary to give the record a particular examination with reference to the exceptions claimed or the scope of the allowance. It is enough to say that the defendant had a right to waive the submission of all questions except that of damage, and to have the argument confined to that question.

The attorney making the closing argument for the plaintiff said, subject to exception: ''I submit to you that every father and every mother, and every business man, whether he is of a large concern or of a humble concern, who knows about this law suit, is watching, is listening, and will inquire what the jury does with the insurance company.'' These remarks were an objectionable suggestion to the jury of matters not proper for their consideration; and were such as to justify, and in fact require, a reversal of the judgment.

The defendant excepted to the refusal of the court to take special verdicts showing the value of the property before the fire and after the fire. It is claimed that this refusal was legal

error, in view of the computation necessary to determine the damages under the eighty per cent. or coinsurance clause. It is claimed further that these special findings were so essential to the protection of the defendant under a general verdict, with this computation left to the jury, that the failure to submit them was an abuse of discretion. We think the manner of submitting the case was so far a matter of discretion that neither of these claims can be sustained. But it was not necessary for the court to have the jury make this computation. The eighty per cent. or coinsurance clause was not involved in ascertaining the loss, but was merely a rule for apportioning the loss between the insurance company and the insured. The only two issues of fact in controversy were, what was the value of the building at the time of the fire, and how much of that value was lost. With the amount of the loss ascertained, the effect of the coinsurance clause was a mere matter of mathematical calculation. If there was any dispute as to the meaning and effect of that clause it was to be determined by the court from an inspection of the contract. There was no exception to the submission of this matter to the jury, and the question whether it was error to do so is not before us. But it seems clear that the better practice in a case of this kind would be to confine the jury to the question of loss, and have the court make the mathematical calculation called for by the coinsurance clause.

The defendant's request to charge, which has already been referred to in connection with matters of evidence, requires further consideration. The plaintiff's evidence tended to show that the building was worth thirty-five thousand dollars at the time of the fire, and that what remained after the fire was worth five thousand dollars, making the loss thirty thousand dollars. The defendant offered no evidence to show that the loss was less than thirty thousand dollars, but its evidence tended to show that the building was worth from sixty-two to sixty-five thousand dollars, and that what remained after the fire was worth at least thirty thousand dollars. The transcript of testimony is not before us, and there is nothing in the exceptions to indicate that there was any evidence in the case showing the cost of the new building and its construction and finish as compared with the old, or evidence of what it would cost to repair or replace the building with material of like kind and quality. So there is

nothing to indicate that the defendant was relying upon the cost of construction as a limitation upon the right of recovery, or that the instruction was called for by any phase of the evidence; and if the request is approved it must stand as a construction of the contract and a rule for ascertaining the actual cash value of the property in all cases.

The request assumes that the cost of a new building, less the depreciation of the old building, necessarily represents the actual cash value of the old building. This view is inconsistent with the terms of the contract. The very frame of the provision implies that the actual cash value of an insured building, taking into account its depreciation from all causes, may in some circumstances be more than the cost of replacing it. The apparent purpose of the provision is to protect the insurer from appreciations of real estate values which are not caused by and do not depend upon the cost of construction. The policy does not make the cost of replacement the invariable test of actual cash value, but limits the recovery in cases where an ascertainment according to actual cash value would exceed that amount. The plaintiff proceeds to make out his case by any evidence which legitimately tends to show actual cash value. The defendant may guard against a possible finding in excess of the cost of replacement by introducing evidence of what that cost would be. But it cannot confine the plaintiff to proof of that character by making the cost of construction the basis of ascertainment.

*Judgment reversed as to damages, but otherwise affirmed, and cause remanded for a re-assessment of damages.*

WATSON, J., concurs in the result.

MUNSON and HASELTON, JJ., dissent from the holding that the quadrennial valuation was admissible.