First National Bank of Highland Park, a National Banking Corporation, Individually and as Trustee Under Terms of Trust Agreement Dated the 20th Day of July, 1951, and Known as Trust No. 575, Appellee, v. Boston Insurance Company, a Massachusetts Corporation, Franklin National Insurance Company, a New York Corporation, Phoenix Insurance Company, a Connecticut Corporation, and Rochester American Insurance Company, a New York Corporation, Appellants.

Gen. No. 47,357.

First District, Third Division.

April 9, 1958.

Released for publication May 9, 1958.

159

160

 

Goldenson & Goldenson, of Chicago (Leonard J. Braver and Eugene S. Goldenson, of counsel) for appellants.

Owens, Owens & Rinn, of Chicago, for appellee.

JUSTICE FRIEND delivered the opinion of the court.

The First National Bank of Highland Park, as trustee, held title to property in Lake Forest, Illinois, consisting of two acres of ground improved with a three-story stuccoed frame residence. In March 1952, the four defendant companies issued fire-insurance policies on the building in the aggregate sum of $46,750. The policies, which were identical in their terms and provisions, insured plaintiff "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss . . ." The policies required the insured to render proof of loss "within sixty days after the loss, unless such time is extended in writing by this company," with the amount to be payable sixty days thereafter.

Subsequently, in May 1952, plaintiff entered into a written contract with Robert and Eleanor Hollingsworth, whereby it agreed to sell the property for $19,000. Pursuant to the contract, $1,000 was paid

down as earnest money; $2,000 was paid June 15, 1952; the balance of $16,000 was to become due November 15, 1952. The contract, a standard printed form, with rider attached, provided that the insurance premiums were to be prorated as of the date of delivery of deed, and that the insurance policies were to be assigned to the buyer. It further provided that "If, prior to delivery of deed hereunder, the improvements on said premises shall be destroyed or materially damaged by fire or other casualty, this contract shall, at the option of buyer, become null and void." The purchasers had not taken physical possession of the property, but it had been agreed that they could decorate the premises for occupancy as a dwelling.

On September 25, 1952 the building was totally destroyed by fire. Defendants were notified, their adjuster inspected the premises, and the companies were furnished with an estimate of replacement costs on October 14, 1952. Conferences were held between the parties, first on October 14, 1952, then on December 4, 1952, at which time the estimate of plaintiff's insurable interest was discussed. However, proofs of loss, which were dated December 11, 1952, were not filed until approximately that date, although defendants had requested them shortly after the October fourteenth conference, when the estimate had been furnished them. A copy of the Hollingsworth contract had been supplied to defendants on November 3, 1952.

The report of Western Adjustment and Inspection Company, an insurance adjuster, dated September 30, 1952, to the defendant insurance companies, contained the following:

"RISK

"Risk consists of a three-story, frame mansion with a veneer of exceptionally thick stucco. The home had 25 or 30 rooms and from neighbors, we learned it was in unusually good condition for its age. Property was utilized solely as a one family residence.

"INSURED

"Title to property currently is held in trust. Mr. Hollingsworth apparently had no legal interest at the time of loss.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"ADJUSTMENT

"Detailed replacement figures are to be obtained to serve as basis of loss. There is no question but what actual loss will well exceed total insurance afforded. Accordingly, we suggest you set your reserve at full amount of your contract."

Evidence adduced upon the hearing disclosed that defendants had employed the Western Adjustment Company to investigate and adjust the loss. Within one day after the fire its manager visited the premises and declared it to be a total loss; he thereupon requested Melville Lackie, the insurance broker, to obtain an estimate of the damage. Lackie, in turn, asked Griffis Brothers, general contractors in Lake Forest, to make up an estimate of the replacement loss, which was done and delivered to the adjustment company on October 14, 1952. This estimate showed that at the time of the fire the replacement cost would total $238,157.

In answer to plaintiff's Notice to Admit Facts, defendants admitted that the actual cash value of the property at the time of loss exceeded the total insurance; they further admitted that negotiations for adjustment of the loss had been undertaken; they conceded that proofs were filed, but not within sixty days after loss, as required by the policies. They took the position that by reason of the existing contract for the sale of the property for $19,000, pursuant to which $3,000 had admittedly been paid by the purchaser, plaintiff's insurable interest did not exceed $16,000, the unpaid balance due under the contract. Trial by the court without a jury resulted in findings adverse to defendants on these issues; judgment was entered

June 4, 1957 finding that the issues were in plaintiff's favor, and decreeing that plaintiff have judgment against the four insurance companies for an amount aggregating $46,750, with interest, representing the full insurance coverage under the policies.

Defendants, appealing, first urge that failure to comply with policy requirements as to filing proof of loss within sixty days bars recovery. It is undisputed that the premises were totally destroyed by fire. The manager of the adjustment company, representing defendants, visited the scene the day following the fire, and reported that the loss was a total one. He requested an estimate of the loss, which was obtained and returned to the adjuster within three weeks of the fire; this adjustment was never questioned; the adjuster never requested any additional estimates; and the estimate obtained by plaintiff stands in the record unrefuted. When the conferences were held between the interested parties on October 14, and December 4, 1952, the defendant insurance companies knew that the building was totally destroyed, and that the estimated insurable value, as well as the replacement cost, was greatly in excess of the insurance coverage. Proofs of loss could have given them no information that they did not already have. Since there is no requirement that proofs of loss must be on any particular prescribed form if the information furnished is adequate and sufficient to inform the insurer as to the nature and extent of the loss, we think the information that defendants already had constituted an adequate proof of loss under the policy provisions. Formal proof of loss, even though requested by defendants and rejected by them after the expiration of sixty days, would have been no more than an idle gesture.

The paramount question, and the one more difficult of solution, is the measure of plaintiff's loss.

Defendants take the position that fire-insurance policies are contracts for indemnification; that plaintiff's interest in the property at the time of loss, and hence the limit of its right of indemnification, is represented by the amount of the balance then due under the outstanding partially executed sales contract—$16,000; that upon receipt of this payment, whether from defendants or the contract purchasers, plaintiff will have recovered its loss and been fully indemnified; and that the principle and purpose of insurance was thereby fully satisfied.

■ The precise question presented has never been passed upon by the courts of this state. It should be noted at the outset that we are not here concerned with any change of interest or title effected by the Hollingsworth contract, nor is the existence of that contract set up as a bar to plaintiff's suit. Illinois followed the legal title theory and rejected the equitable conversion theory in Budelman v. American Ins. Co., 297 Ill. 222 (cited and discussed by both counsel), holding the law to be well settled in this state that an executory contract for the conveyance of real property does not convey either the legal or equitable title to the vendee, and it is only when the vendee performs all acts necessary to entitle him to a deed that he acquires an equitable title and may compel a conveyance.

■ From the language of texts (44 C. J. S. Insurance § 1 (p. 472), § 14 (p. 477 et seq.); 45 C. J. S. Insurance § 915 (p. 1010); Richards on Insurance, 5th ed., 1952, vol. I, sec. 152 (p. 574); Appleman's Insurance Law and Practice, vol. IV, sec. 2107 (p. 10)), decisions in this State (Mack v. Liverpool and London and Globe Ins. Co., Ltd., 329 Ill. 158; Le Doux v. Dettmering, 316 Ill. App. 98; Patterson v. Durand Farmer's Mut. Fire Ins. Co., 303 Ill. App. 128), and elsewhere (Draper v. Delaware State Grange Mut. Fire Ins. Co., 28 Del. 143, 5 Boyce 143, 91 Atl. 206),

165

it appears that insurance is personal and that indemnification of the insured is the goal to be attained. The principle to be adduced from these texts and authorities is that such policies are not contracts to insure property against fire, but to insure the owner of the property against loss by fire; that destruction by fire of the property described in the contract of insurance is not the contingency upon which the insurer promises to indemnify the insured—it is only when by fire the insured has sustained a loss that the insurer may be called upon to perform its contract of indemnity. The policies in the instant case limit the insured's recovery, in any event, to its interest in the premises. The pertinent inquiry is to determine the extent of the interest of the insured which is the object of indemnification; and, as defendants' able counsel say, this question is not free from doubt.

Under the policies in question, defendants insured plaintiff "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss . . ." It is admitted that the loss to the insured's premises exceeded the insurance in force. How, then, is the interest of the insured and the actual cash value to be determined? Certainly not by the sales value, which is a different thing, or by what one is willing to accept for the sale of the property immediately preceding the destruction thereof by fire.

Plaintiff cites and quotes at length from two cases (Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85, and Milwaukee Mechanics Ins. Co. v. Maples (Ala. 1953), 66 So.2d 159) wherein, on similar facts, the courts adopted the rationale of plaintiff's position in this proceeding. In the Dubin Paper Company case, one Perkins had entered into a written agreement to sell improved real estate to plaintiff for

$25,000. After execution of the contract the purchaser obtained $25,000 of insurance; at the time the sales contract was entered into, Perkins carried $23,500 coverage through one company, which he increased to $33,500 by endorsement after the agreement of sale was negotiated; through another company Perkins had coverage of $3,000. Thus, before the fire, the vendor and the vendee, between them, carried insurance coverage totaling $61,500. Following the issuance of the additional insurance policies, but before the real estate contract had been consummated, the properties were damaged by fire to the extent of $49,353. Subsequently the contract was consummated; plaintiff collected under the $25,000 insurance coverage which had been issued to it, and thereafter brought suit to compel the insurance companies to pay the coverage under the policies which were held by Perkins. The defendant insurance companies contended that after the agreement of sale was executed, the policies covered Perkins only to the extent of insuring the payment of the balance of the purchase price; and they argued that inasmuch as the balance of the purchase price had been paid, Perkins suffered no loss. The court rejected this contention and in support of its position cited State Mut. Fire Ins. Co. v. Updegraff, 21 Pa. 513, and Reed v. Lukens, 44 Pa. 200, 84 Am. Dec. 425. The insurance policies in the Dubin Paper Company case contained substantially the same provisions as those in the instant proceeding. After setting forth the insurers' contention that all property insurance agreements are "considered contracts of indemnity intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster," the court expressed the opinion that the error in the argument was in defendants' interpretation of the word "loss," which was given "too wide a meaning," and then proceeded to define a contract of fire insurance in simple language as follows: "For the premium paid by the

167

insured, the insurer will, in case the insured's building is destroyed by fire, indemnify him to the extent that he can show that his wealth has been depleted by that fire. In other words, the insurance company gives the insured the equivalent in money of the building lost by fire. The 'loss' which the insurance company contracted to pay to the owner of the building in the event of its destruction by fire is the actual worth in money of that building before it was destroyed." In commenting upon and approving the reasoning of the trial judge in that case, the reviewing court quoted from his summary as follows: " 'The vendor had an insurable interest in the whole estate both legal and equitable, and not just to the extent of the unpaid purchase price. . . . The policies when issued covered the whole interest, the premiums covered vendor's entire insurable interest and the contracts of insurance covered the vendor's insurable interest even in the event of an agreement of sale. . . . The insurance companies have accepted the entire premium for the whole interest both legal and equitable; they had intended to insure the entire interest and there has been no change in their insured risk. . . . Why should they be permitted to take advantage of a collateral contract existing and enforcible only as between vendor and vendee so as to escape liability for a loss contracted for and the risk for which they were paid for many years?' "

As pointed out in the Dubin Paper Company case, the destruction of a building by fire may conceivably bring many benefits to the owner, but whatever these may be, the insurance company cannot participate in them. Theoretical examples of such benefits are stated by the court: "Suppose that after a building is destroyed by fire a benevolent relative hears of the insured's loss and, not knowing or caring whether the building was insured, sends the insured a check for

168

$10,000 as a solace to him, would the insurance company be permitted in its settlement with the insured to deduct the $10,000 which was given to him by his relative as a result of the loss? The only logical answer to that question is 'No.' The insurance company would have no right to appropriate to itself any part of the windfall to the insured. Suppose that after the building was destroyed by fire there was found in the ruins, in a heat-resistant container which, unknown to anyone had been concealed under one of the floors of the destroyed building, the sum of $10,000. That would belong to the insured unless some other person could establish a superior claim to it. The insurance company would have no valid claim on that windfall."

The other decision upon which plaintiff places great reliance (the Milwaukee Mechanics Insurance Company case) is likewise in point. There the owner of real estate had given an option to one Engel to purchase a building for $33,000, and within the time specified the option was exercised. A fire occurred before any deed was delivered. The fire loss was $4,000, and without repairing the building, the owner received $32,000 for the property, having reduced the purchase price by $1,000. The insurance company offered $1,000 in settlement, contending that the $1,000 amount was all that was due the owner since she had sold the property in its damaged condition for only $1,000 less than the contract price. However, the Alabama court rejected this contention, saying: "At the time the policy was written and at the time of the loss, the appellee, as between appellee and appellant, insurance company, was, in law, the owner of the full insurable interest. The appellant's contract was to insure 'to the extent of the actual cash value of the property at the time of the loss.' The fact that the appellee later realized by sale to within $1,000 the amount she has agreed to sell the building for is no defense available

169

to the appellant, who was an entire stranger to the dealings between appellee and the vendee. Appellant's liability must, under the contract, be measured by the fire damage at the time of the loss and not by fortuitous circumstances later befalling the insured and to which appellant was in no wise privy. Dubin Paper Co. v. Insurance Co. of North America, supra; Heidisch v. Globe & Republic Ins. Co., supra [368 Pa. 602, 84 A.2d 566]."

We think that the rationale of the courts in those cases is sound and precisely applicable to the situation before us. Conceivably, there may be many situations in which an owner of property may be willing to sell for less than the cash value; his need for ready cash; his disinclination to wait for an advantageous offer because of the attendant inconveniences during the waiting period; his wish to benefit an individual or an institution by donating the property to the beneficiary, or selling it under the market value. We feel that in any of these, or similar, circumstances, the insurance company would have no right to appropriate to itself the difference between the actual cash value, which represents the loss for which the insured paid premiums, and the lesser amount, for which the sale was made.

■ Lastly, it is urged that the refusal of defendants to pay the insurance proceeds was vexatious and unreasonable, and that attorneys' fees in the amount of $500 be assessed against each defendant, in accordance with the provisions of the Insurance Code (Ill. Rev. Stat. 1957, ch. 73, par. 767). The trial judge did not see fit to allow these fees, nor are we inclined to think that defendant's delay could be characterized as vexatious or unreasonable. The measure of the interest of insured which is the object of indemnification is an issue presented for the first time in this State, and surely defendants are entitled to their defense without being penalized.

For the reasons indicated, the judgment of the Superior Court is affirmed in all respects.

Judgment affirmed.

BURKE, P. J. and BRYANT, J., concur.