(No. 34906.—)

THE FIRST NATIONAL BANK OF HIGHLAND PARK, Appellee, *vs.* BOSTON INSURANCE COMPANY *et al.,* Appellants.

*Opinion filed May 22, 1959—Rehearing denied September 22, 1959.*

CLAUSEN, HIRSH, MILLER & GORMAN, and GOLDENSON AND GOLDENSON, both of Chicago, for appellants.

OWENS, OWENS & RINN, of Chicago, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In March of 1952 the four defendant insurance companies issued policies of fire insurance aggregating $46,750 to the First National Bank of Highland Park on property to which it held title as trustee under a land trust. Each of the policies indemnified the insured "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss * * * nor in any event for more than the interest of the insured, against all direct loss by fire."

In May of 1952 the insured entered into a contract to sell the property to Robert and Eleanor Hollingsworth for $19,000. Of this amount, $3,000 was paid to the insured and the balance was to be paid at the scheduled closing in November of 1952. The form contract provided that insurance premiums were to be prorated as of the date of the delivery of the deed and that the insurance policies were then to be assigned to the buyers. It also provided, "If, prior to delivery of deed hereunder, the improvements on said premises shall be destroyed or materially damaged by fire or other casualty, this contract shall, at the option of the buyer, become null and void." The building on the

property is described in the record as a "three-story, frame mansion with a veneer of exceptionally thick stucco." It contained 25 to 30 rooms and was in unusually good condition for its age. Although the buyers did not take physical possession, they began to redecorate.

On September 25, 1952, the building was totally destroyed by a fire of unknown origin. Proofs of loss were filed. After negotiations between the insured and the insurers for adjustment of the loss had reached an impasse, the insured brought this action to recover the face amount of the policies. The insurers conceded that the actual value of the burned building at the time of the fire exceeded the total insurance. An appraisal secured by the insurance adjusters indicates that its reproduction cost was in excess of $230,000. But the insurers took the position that because of the existence of the contract for sale of the property for $19,000, $3,000 of which had been paid, the "interest of the insured" did not exceed $16,000. The case was tried by the court without a jury. At the time of the trial the contract of sale was neither cancelled nor consummated. A judgment was entered in favor of the insured for the full amount of the insurance coverage, and costs. The Appellate Court, First District, affirmed, 17 Ill. App. 2d 159, 149 N.E.2d 420, and we granted leave to appeal.

The position of the insurers is that a contract of insurance is a personal contract of indemnity and that in no event is an insured entitled to be paid more than his actual pecuniary loss. They point out that the public policy against wagering contracts has always dictated that casualty insurance be limited to indemnity, and they urge that fire insurance must be so limited lest the lure of profit by means of insurance should increase the hazard of arson. They rely upon the clause of the policy which limits recovery to the extent of the insured's interest, and they argue that the insurable interest of a vendor in an executory contract

for the sale of realty can not exceed the balance of the unpaid purchase price. That amount, they say, would fully indemnify him; more would unjustly enrich him. The argument is based in part upon the doctrine of equitable conversion: "When a valid, enforceable contract has been entered into for the sale of real estate, as between the vendor and vendee equity regards the vendee as the owner of the land and the vendor as the owner of the purchase money, which is personalty." *Rhodes v. Meredith,* 260 Ill. 138, 143.

The problem that the case presents is not an easy one. When insured property is in a single ownership, it is not hard to hold to the orthodox concept of an insurance contract as a personal contract of indemnity. But there are inherent difficulties when there are multiple interests in the property. Those inherent difficulties are augmented because the effect given to an executory contract to sell realty, and to the doctrine of equitable conversion, differs significantly from one jurisdiction to another. The result is that neither courts nor commentators are agreed upon proper solutions for the many variations on the vendor-vendee-insurer theme. See, *e.g., Dubin Paper Co. v. Insurance Co. of North America,* 361 Pa. 68, 63 A.2d 85; *Wohlt v. Farmers' Home, Hail, Tornado & Cyclone Ins. Co.* 206 Wis. 35, 238 N.W. 809; Vance on Insurance (3rd ed. by Anderson), sec. 131; Goble, "The Moral Hazard Clauses of the Standard Fire Policy," 37 Col. L. Rev. 410 (1937); Godfrey, "Some Limited Interest Problems," 15 Law & Cont. Problems 415 (1950); Vanneman, "Risk of Loss in Equity," 8 Minn L. R. 127 (1923).

As we see it there are several difficulties with the position of the insurers. In the first place, it transplants the doctrine of equitable conversion into an area where it does not belong. That doctrine was evolved in order to carry out the intention of the parties to the contract. To that

end it acts upon the rights of the parties to the contract and those who claim under them. But it has frequently been held and stated that it should have no effect upon the rights of others. Pomeroy states the limitation in these terms: "The doctrine seems to be correctly formulated by saying that the effects extend only to those persons who claim or are entitled to the property under or through the instrument, or directly from or under the author of the instrument. Some of the cases definitely hold that a conversion takes place no further than is necessary for the purposes of the will or other instrument." Pomeroy, Equity Jurisprudence, 5th ed., sec. 1166; *cf. Smith v. Smith,* 174 Ill. 52, 59.

It is true that as between the vendor and the vendees in this case the value of the vendor's interest under the contract at the time of the fire was $16,000. The insurers, however, made no attempt to show that the contract price of $19,000 represented the actual value of the insured building. Indeed, they conceded that its value exceeded the aggregate amount of the policies, $46,750. While it is clear that a vendee can hold a vendor to the terms of his contract, it is by no means clear that a stranger to the contract should be allowed to fix upon the contract price as an absolute measure of the value of the property. As was pointed out by Mr. Justice Friend in the opinion of the Appellate Court, (17 Ill. App. 2d 159, 170,) many factors that are irrelevant to an objective determination of value may enter into the determination of price between vendor and vendee.

Equity regards as done that which should be done, and so provides for the specific performance of a land contract. But the obligation of such a contract is not a perfect one. The vendee may, or may not, be able to pay the purchase price. If the vendor conveys to one who purchases without notice of the contract, his obligation to convey becomes an

obligation to respond in damages to the vendee. And in this case the contract price could at most be but a temporary measure of value. If the fire had occurred before the contract was signed, the insured could have recovered the face amount of the policies. And if the contract had been performed before the fire occurred, the policies would have been assigned to the vendees and they would have been entitled to recover the face amount of the policies.

We hold, therefore, that the contract price did not conclusively determine the value of the vendor's interest for the purpose of determining the amount due upon the insurance policies.

The conclusion that we have reached is buttressed by a more technical argument advanced by the plaintiff, which turns upon the meaning of the word "interest" in the clause which provides that the insured is not to be indemnified "in any event for more than the interest of the insured." The plaintiff urges that the form of policy here involved is the New York Standard Fire Insurance Policy and that it is to be construed according to New York law. The insurers take the position that the policy is an Illinois policy prescribed by the Director of Insurance in accordance with the statute, (Ill. Rev. Stat. 1957, chap. 73, par. 1009,) and that the fact that it is also the standard fire insurance policy for New York is coincidental. We are of the opinion that under the law of either State the result would be the same.

A New York statute provides: "The making of a contract to sell or to exchange real property shall not constitute a change in the interest, title, or possession, within the meaning of the applicable provisions of any contract of fire insurance, including any contract supplemental thereto, hereafter made covering property located in the state." (New York Insurance Law, sec. 170.) Under this statute it has been held that a vendor "* * * was, at the time

of the fire, the absolute and legal owner of the insured property so far as appellant [the insurer] was concerned and his insurable interest was the full value of the insured building * * *." *Rosenbloom* v. *Maryland Insurance Co.* (1939) 258 App. Div. 14, 15 N.Y.S.2d 304.

The leading case in Illinois is *Budelman* v. *American Insurance Co.* 297 Ill. 222. There the insured had entered into an executory contract to sell the property on installments. The insurer contended that the policy had become void prior to the fire by reason of the change in the interest of the assured that resulted from his contract to sell. The court rejected this contention saying, "In an action at law the vendor, being the holder of the legal title, is regarded as the sole and unconditional owner of the property, although the property in his hands or the proceeds of the insurance are impressed with a trust which a court of equity will compel him to execute. (*Security Ins. Co.* v. *Kuhn,* 207 Ill 166.) The risk of the property remains with the title and the contract is personal with the vendor, the loss or destruction of the property falling upon him as the owner. Interest, as used in the alienation clause of this policy, means legal interest, and therefore is retained by the party holding the legal title." 297 Ill. 222, 225.

The insurers point out that neither the New York statute nor our interpretation of the word "interest" in the *Budelman case* is controlling here, because the statute was enacted and the case was decided with respect to a different form of policy. The earlier form provided that the policy should be void "if any change other than by the death of an insured takes place in the interest, title or possession of the subject of insurance, * * * by voluntary act of the insured or otherwise." The present form of policy which limits recovery to "the interest of the insured" came into use in Illinois in 1945 and in New York in 1943. Of course it is possible that the word "interest" was intended

to have a different meaning in the present form of policy than it had in the earlier form. But if it was intended to mean that recovery should be limited by the price fixed in an executory contract for the sale of the property, it would have been easy to say so.

One other point should be mentioned. In response to questions from the bench during the oral argument in this court, counsel for the insured stated that the insured was obligated to account to the purchasers with respect to the insurance proceeds. Counsel for the insurers complained that this had not been previously revealed, and both parties were allowed to submit supplemental briefs on the effect of this statement.

The position of the insured appears to have been taken in reliance upon *Budelman* v. *American Insurance Co.* 297 Ill. 222. It is apparent from the record that even if the insurers were not formally apprised of it, they had reasonable grounds for inferring it. During the initial negotiations the insured's original attorney withdrew "in the light of the contract to purchase the property," and allowed the attorney for the purchasers to pursue the claim. That attorney has since represented the insured. In this we see no prejudice to the insurers. The contract of sale gave the buyers the option to cancel the contract if the building was destroyed or materially damaged by fire. That contingency occurred, and we do not see how the way in which the contracting parties have dealt with the resulting situation can be a matter of concern to the insurers.

The judgment is affirmed.

*Judgment affirmed.*