## Eagle Square Manufacturing Company
### v.
## Vermont Mutual Fire Insuurance Company

[ 212 A.2d 636 ]

June Term, 1965

Present:  Holden, C. J., Shangraw, Barney and Keyser, J. J.

Opinion Filed July 23, 1965

Per Curiam Filed October 5, 1965

*Ryan, Smith and Carbine* for plaintiff.

*Black and Plante* for defendant.

**Holden, C. J.**  The plaintiff owned a dwelling house nearby its manufacturing establishment in Stockbridge, Vermont. The building was a two story frame structure, erected on a stone wall foundation.

It consisted of four rooms and bath at the first level with three bedrooms upstairs. It was electrically wired and was supplied with water and central heating.

On July 12, 1961, the defendant issued to the plaintiff a policy of fire insurance on the dwelling in the amount of $5,000. The insuring agreement was to indemnify the plaintiff "to the actual cash value of the property at the time of loss" during the five year period from July 17, 1961. On March 23, 1963, fire of unknown origin totally destroyed the structure.

At the time of the fire, the building had been unoccupied as a dwelling for about two years and was partially dismantled under an arrangement between the plaintiff and one of its employees, Douglas Davis. This was by verbal agreement that Davis could have the material contained in the building in return for his work in tearing it down. No time limit was fixed for completing the demolition work.

After the fire, the defendant refused to compensate the plaintiff for any loss beyond the expense of removal of the debris remaining after the fire. This action on the policy ensued. It was heard by the Washington County Court, sitting without a jury. In addition to the facts just stated, the court determined the actual cash value of the building at the time of the fire was six thousand dollars ($6,000). Judgment for the plaintiff was entered in the amount of five thousand dollars ($5,000).

The defendant appeals. It challenges the result reached by the trial court for two reasons. First, it contends there was no proper evidence that the building had an actual cash value of $6,000. Secondly it maintains the plaintiff had no insurable interest in the building at the time of the loss.

The plaintiff introduced evidence on the issue of value. A real estate broker, familiar with the subject property, as well as other property values in the surrounding countryside, testified the dwelling house had a market value of $9,000 before the demolition project was started. It was the opinion of this witness that it would cost between twenty-five hundred and three thousand dollars to restore what had been demolished before it was overtaken by fire. He appraised the value of the property just before the fire at $6,000 to $6,500.

There was other evidence which contributed to the inquiry. It appeared that the property had been substantially improved during its occupancy by the plaintiff's former plant superintendent, who at the time of trial was the director of real estate and insurance for the plain-

tiff's parent company. An improved water system was installed, also a new roof. The premises were rewired. A new bathroom and other modern plumbing fixtures were installed. This remodeling was done in late 1946.

Later the house was occupied until 1961 by the witness Douglas Davis, the plaintiff's foreman. During his occupancy a new furnace was installed in 1958. The garage was attached in 1952. The flooring consisted of both hardwood and wide pine boards.

Against this, it appeared that the house had not been used as a dwelling since 1960. Late in 1962, Davis, with the help of his two oldest boys, started to dismantle part of the interior by removing plaster from some of the rooms. Flooring was taken out of two rooms and some plumbing fixtures were disconnected. The windows were removed but later reinstalled. The storm windows were sold by Davis and he had talked of selling the furnace, although no price had been fixed.

The defendant offered no independent evidence on the question of value. It rested its defense entirely on the facts presented in the plaintiff's case. It places principal reliance on the proposition that its obligation to indemnify is limited to restoring the insured to the same financial position it was in before the loss occurred. It contends that since the building was in the process of demolition, the plaintiff has suffered no financial loss and the property had no "actual cash value" as a matter of law.

■ The search for the true value of insured property destroyed by fire is not confined to any single formula. Both the insured and his insurer are at liberty to resort to any evidence which logically aids in the formation of a correct estimate of the value of the property as it was before the damage occurred. *Citizens' Bank* v. *Fitchburg Fire Insurance Co.*, 86 Vt. 267, 273, 84 Atl. 970; 29 A Am. Jur. Insurance § 1544; 46 C.J.S. Insurance § 1338 b.

■ If property is under contract for sale, the price is admissible. Both market value and replacement cost are permissible standards for determining loss by fire — "but they are standards and not shackles." *Pinet* v. *New Hampshire Fire Insurance Co.*, 100 N.H. 346, 126 A.2d 262, 61 A.L.R. 2d 706, 711 (Kenison, C. J.) ; see also annotation which follows.

■ It was important to this controversy that the insured had granted permission to its foreman to dismantle the building for what he

could salvage. But that fact alone did not render the structure worthless nor deprive it of all value as a matter of law. The term "actual cash value" as used in the agreement to indemnify imposed neither market nor salvage values as legal criteria. *Knuppel* v. *American Insurance Company*, 269 F.2d 163, 164.

Functional obsolescence was an important element in determining the extent of the loss, but as with fair market value and replacement cost, it was not the sole factor. *McNarney* v. *Newark Fire Insurance Co.*, 257 N.Y. 176, 159 N.E. 902, 904. Of necessity, obsolescence relates to conditions prevailing at the time of the fire rather than to some future time when demolition might be complete. *American Insurance Company* v. *Treasurer of School District No. 37*, 273 F.2d 757, 759.

It may well be that the plaintiff suffered no direct financial loss as a result of the fire. Perhaps its financial position remained unchanged by the event. The findings are silent on the point, except by way of inference.

We are not inclined toward that conclusion since we must construe the findings to support the judgment, if possible. *Anton* v. *Fidelity and Casualty Company of New York*, 117 Vt. 300, 304, 91 A.2d 697. In any event, the inference claimed by the defendant does not impair the result reached by the trial court.

At best, the plaintiff's engagement with Davis was no more than an executory contract concerning the building as it stood at the time of the fire. The existence of this undertaking did not deprive the plaintiff of insurable interest in the property. *Dubin Paper Co.* v. *Insurance Company of North America*, 361 Pa. 68, 63 A.2d 85, 95, 8 A.L.R. 2d 1393 and annotation at 1440; *First National Bank of Highland Park* v. *Boston Insurance Company*, 17 Ill. 2d 147, 160 N.E. 2d 802, 805.

The question was extensively explored in the Dubin Paper Company case, supra, and the opinion refers to the problem of impending demolition. It points out that the owner of property purchased with the intention of razing the building to make way for a better building or a higher use of the land, might well regard the old structure as a liability because of the cost of demolition. But the presence of that situation would not reduce the owner's insurable interest in the structure should it be destroyed before demolition was accomplished.

By the same token, the fact that the plaintiff may have suffered no out of pocket expense and sustained no direct financial loss will not

defeat its right to recover on the insurance agreement. *Heidisch* v. *Globe Republic Insurance Company,* 368 Pa. 602, 84 A.2d 566, 29 A.L.R. 2d 884, 887.

■ There may be many situations in which the owner of property may be willing or anxious to part with it for less than its actual cash value. Perhaps he is unwilling to wait for a gainful sale because of inconvenience during the waiting period. Perhaps it may be his object to benefit some individual by donating property or selling it at a token price. However this may be, the insurer is not entitled to appropriate the owner's ungainful arrangement with an outsider as a substitute for true value, or for the coverage upon which the premiums have been paid. *First National Bank of Highland Park* v. *Boston Insurance Company,* 17 Ill. App. 159, 149 N.E. 2d 420, 425; aff'd 160 N.E. 2d 802, 805 (cited above).

While the appraisal made by the court coincided with the opinion of the expert as to fair market value, we are not convinced the finding of actual cash value was geared to this factor alone. Other facts reported in the findings indicate the trier was mindful of these considerations and that they contributed to the final determination.

The evaluation made by the trial court was adequately founded on the evidence. That appraisement carried with it the measure of the plaintiff's insurable interest.

Lastly, the defendant urges that there is no evidence that the insured property had ever been owned by the plaintiff. In the defendant's answer to the complaint, the defendant admitted the allegation of plaintiff's ownership. Later the defendant moved to amend its answer to include a denial that the building belonged to the plaintiff. It doesn't appear that the motion was granted.

The plaintiff's ownership was not questioned by the defendant at the trial other than the presence of the fact that Davis was to have the salvage material. There was no evidence of sale of the building. Davis testified merely that he "was given permission to tear it down for the materials."

Later, when the plaintiff sought to introduce evidence that it paid taxes on the property, the defendant objected. The presiding judge reminded counsel that title had not been made an issue in the case. Counsel for the defendant replied: "I thought we were going to try this, as the Court said from the bench, on the issue of fair value of the property."

That is the theory upon which the trial proceeded. The court below determined the actual cash value and reduced the amount found according to the limit of coverage specified in the policy. The judgment was correctly awarded.

*Judgment affirmed.*

## On Motion for Reargument

[ 213 A.2d 201 ]

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

**Per Curiam.** Before certification of the mandate in this appeal the defendant filed a motion for reargument. It contends that the Court overlooked the terms of the insuring agreement providing that liability was not to be "in any event for more than the interest of the insured." This contention is based on the position which the defendant has persistently maintained that "it is obvious that the plaintiff had no interest whatsoever in the insured structure at the time of the loss."

The inference, which the defendant regards as obvious, is one of fact rather than a conclusion of law. The result reached by the trial court was required by two essential facts which dominate the controversy because the defendant offered nothing by way of proof to oppose them. The structure "belonged" to the plaintiff at the time of the fire. Although it had been partially dismantled, the undisputed evidence was, and the trial court found, that the dwelling had an actual cash value of $6,000.

By the terms of the policy the plaintiff's loss was to be measured by cash value rather than the particular worth of the property to the owner. This is so whether the owner entertained an exaggerated or minimal estimate of the property's utility to him for his own particular uses.

The defendant complains because the trial court failed to act on its motion to amend the answer to include a denial of the plaintiff's ownership of the insured property. See *Shea* v. *Pilette,* 108 Vt. 446, 454, 189 Atl. 154. In this instance the matter was discussed at the close of the hearing. It appears from the remarks of the presiding judge that the court in no way foreclosed the defendant from advancing any consideration to oppose the plaintiff's evidence of ownership of the insured property. This liberty was granted despite the pre-trial agreement that the case would be tried solely on the question of the value of the insured property at the time of the fire.

Although the door was open, the defendant offered no proof to show transfer of title or ownership of the insured property by the plaintiff. Declining the opportunity to offer evidence on the point, the defendant clung to the position it has maintained throughout the course of the entire proceedings by stating to the trial court: "We say that under the cases where the building is in actual process of demolition it obviously is a matter of law it doesn't have any value". (sic)

We rejected this proposition by holding that the plaintiff's ownership of the insured property, coupled with uncontradicted evidence of its actual cash value, was sufficient to require the defendant to indemnify the plaintiff to the extent of the established value within the policy limits. The substance of the present motion is an effort to argue the question further. But the motion fails to demonstrate any point of law or fact which was misapprehended or overlooked, capable of affecting the result reached in the first instance as required by Rule 22.

*Request for permission to reargue is denied. Let the original entry go down.*