Raymond **FORER** et al.

v.

**QUINCY MUTUAL FIRE INSUR-
ANCE COMPANY.**

Supreme Judicial Court of Maine.

Aug. 11, 1972.

Rudman, Rudman & Carter, by Gene Carter, Bangor, for plaintiffs.

Paine, Cohen & Lynch, by Errol K. Paine, Bangor, Peter M. Weatherbee, Hampden, for defendant.

Before DUFRESNE, C. J., and WEBBER, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

Plaintiffs brought suit in the District Court on a "homeowners" policy issued to them by the defendant Insurance Company. Plaintiffs sought to recover their loss claimed to have resulted from the freezing of the plumbing and heating systems contained in a portion of their premises. The basic policy was in the standard form required by 24 M.R.S.A., Sec. 1402.[1] The "Homeowners Mandatory Endorsement"

---

1. The loss occurred in 1968 and this statute was then in force. This statute was subsequently repealed and replaced by the provisions now found in 24-A M.R.S.A., Secs. 3001 et seq. enacted by P.L. 1969, Ch. 132, Sec. 1.

added thereto enlarged the covered perils and included:

"17. Freezing of plumbing, heating * * * systems and domestic appliances, but excluding loss resulting from freezing while the building(s) is vacant or unoccupied, unless the insured shall have exercised due diligence with respect to maintaining heat in the building(s), or unless the plumbing and heating systems and domestic appliances had been drained and the water supply shut off during such vacancy or unoccupancy."

The policy, as required by statute, provided for insurance "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss."

The Judge of the District Court made findings applicable to issues sought to be raised on appeal as follows:

" * * *

"(5) that the Plaintiffs did at all times exercise due diligence in the maintenance of this property and, more particularly, in the maintenance of the plumbing and heating systems of said property.

"(6) that on the thirteenth day of January 1968 the Plaintiffs suffered a loss and damage when the plumbing and a heating system were frozen.

"(7) that it is found that this freezing was not caused by any fault on the part of the Plaintiffs.

"(8) that it is found that the damage to their property from this freezing was in the amount of $3,005.93. This damage was the actual cash value of that part of the building structure that was damaged.

" * * *

"(13) It is found as a fact that at the time of the hearing no actual repair or replacement had taken place on said damaged premises. It is found as a fact that at the time of loss the whole amount of insurance applicable to said building structure for the peril causing the loss was less than 80% of the full replacement cost of such building structure, and, therefore, according to the terms of said contract, this Court concludes as a matter of law that, since the loss was included in the coverage insured against by said contract, that the damage was computed at the actual cash value of that part of the building structure damaged, and said actual cash value having been determined to be $3,005.93, judgment was entered for the Plaintiffs in that amount."

From this judgment defendant appealed to the Superior Court. District Court Civil Rules, Rule 73(a) provides for such appeal which is limited in these terms:

"The appeal shall be on questions of law only and shall be determined by the Superior Court without jury on the record on appeal specified in Rule 75. Any findings of fact of the District Court shall not be set aside unless clearly erroneous."

On review the Superior Court discovered no errors of law apparent on the record and affirmed the District Court judgment. On appeal to the Law Court the appellant filed these points of appeal:

"1. The Court erred in finding no error of fact or law in the judgment entered for Plaintiff-Appellee in the Third District Court for Southern Penobscot County.

"2. The Court erred in construing the Insurance Contract term 'actual cash value' to encompass the market value plus replacement and repair costs where such repairs were not undertaken.

"3. The Court erred in its interpretation of the language of the subject Insurance Policy in finding that Defendant carrier was obligated to repay the esti-

mated amount necessary to repair the building when in fact the repairs were not made."

We are not informed as to whether Points 2 and 3 are intended by their reference to "Court" to assign error in the District Court or in the Superior Court. In any event our task, like that of the Superior Court, is to ascertain whether or not on the record brought up from the District Court errors of law are apparent which affect the validity of the judgment.

If we understand the arguments of counsel correctly, there is no dispute between them as to the contractual method of computing the loss. Plaintiffs are entitled to the "actual cash value of the property" damaged which amount may, however, in no event exceed what "it would cost to repair or replace the property with material of like kind and quality." Other provisions of the policy which apply only when the assured have completed actual repair or replacement have no application here. The contention of the defendant seems to be that the District Court awarded, not the "actual cash value," but the cost of repair and replacement which defendant asserts is in this case a larger amount than "actual cash value."

■ The phrase "actual cash value" is inserted in the policy as a statutory requirement. As thus used it has not as yet been given legislative or judicial definition in this jurisdiction. It is clear that it means something other than the cost of repair and replacement since such cost is specifically imposed as a separate and limiting factor to provide a ceiling on loss and safeguard the insuring company. We think, as did the Court in Jefferson Insurance Co. of N. Y. v. Superior Court (1970) 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880, that logic compels the conclusion that "actual cash value" in this context refers to the fair market value of the property insured. The purpose of the contract is neither to enrich nor to impoverish the assured but to make him whole and this is accomplished if in fact he receives the difference between the fair market value before and after the loss, applying the usual test of what a willing buyer would give and a willing seller would take on a cash sale in a free and open market. We conclude that it was the task of the District Court to ascertain on the basis of the evidence presented the "actual cash value" of the loss as thus defined and award that amount or so much thereof as did not exceed the cost of repair or replacement. By his findings the Judge of the District Court clearly indicated that this is precisely what he did.

■ Appellant here must demonstrate *on the record* that the findings of the District Court and the legal conclusions based thereon are "clearly erroneous." D.C.C.R., Rule 73(a); McAvoy v. Rush (1969-Me.) 248 A.2d 764. Appellant is seriously disadvantaged in sustaining his burden by the fact that no record was made of the evidence taken in the District Court, nor was any effort made to prepare a record in the alternative form permitted by D.C.C.R., Rule 75(c). As a result the only record before us (and before the Superior Court) bearing on the disposition of factual issues consists of (a) the findings of the District Court, (b) the insurance contract, and (c) an exhibit purporting to be an estimate, otherwise unidentified. There is nothing appearing in this record which clearly demonstrates, or for that matter even suggests, that the District Court Judge did not have before him credible evidence fully supportive of his conclusion that $3,005.93 represented the "actual cash value" of the damage to plaintiffs' insured property (as we have defined it) or so much thereof as did not exceed the cost of repair and replacement. Appellant appears to attach great significance to the "estimate" in evidence as an exhibit. We can only say that for aught that appears to the contrary, the factfinder may have in the light of other evidence before him assigned no weight whatever to this exhibit. On this record

we have no means of testing its evidentiary force, if any.

We conclude that no errors of law are shown and the judgment of the District Court must be affirmed.

Appeal denied.

WEATHERBEE, J., did not sit.

All Justices concurring.