Dolard **GENDRON** and Priscilla
M. Gendron

v.

**PAWTUCKET MUTUAL INSURANCE
COMPANY.**

Supreme Judicial Court of Maine.

April 21, 1978.

Rocheleau & Fournier, P. A. by Paul C. Fournier (orally), Lewiston, for plaintiff.

Berman, Berman & Simmons, P. A. by Gary Goldberg (orally), Robert A. Laskoff, Lewiston, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On April 3, 1972 plaintiffs Dolard and Priscilla M. Gendron instituted a civil action in the Superior Court (Androscoggin County). Plaintiffs' complaint alleged that defendant Pawtucket Mutual Insurance Company had issued a fire insurance policy to plaintiffs under which plaintiffs were entitled to recover from defendant the amount of $32,000.00 plus interest and costs. Answering, defendant generally denied liability and asserted, more particularly, that it had no liability to plaintiffs because plaintiffs lacked insurable interest in the property insured under the policy.

The parties agreed to a reference of the liability question (Rule 53 M.R.Civ.P.), reserving rights to have the issue of damages, if reached, tried by a jury. The referee filed his report on July 19, 1976. He found no liability of defendant to plaintiffs and recommended entry of judgment for defendant.

After plaintiffs had filed timely objections to the acceptance of the report, the Justice presiding in the Superior Court ac-

cepted the report in full, adopted it as the opinion of the Court and ordered entry of judgment for defendant, with costs. Plaintiffs have appealed from the judgment.

We sustain the appeal.

On August 15, 1969 plaintiffs purchased from defendant an insurance policy, effective for three years and in the face amount of $32,000.00, insuring against loss caused by fire the property of plaintiffs constituting a gasoline service station situated at 990 Lisbon Street in Lewiston. On December 8, 1971, a fire destroyed the service station. After the purchase of the insurance policy but before the fire, plaintiffs had leased the land, and the then existing gasoline service station building on it, to the Shell Oil Company. The lease was for an initial term of fifteen years, Shell having options to extend for three additional five year terms. In an appendage to the lease Shell agreed to

"raze and remove [within one year] the existing three-bay service station on the premises and construct a new three-bay ranch style service station on the premises."

It was further provided:

(1) "All buildings . . . constructed . . . on the premises by Shell . . at any time during the continuance of this . . . lease . . . shall be and remain Shell's property during the continuance of the Lease . . . . At any termination of this Lease . . . Shell shall surrender the premises to Lessor . . .",

and

(2) "Shell shall be obligated (and exclusively entitled) to insure the premises to their full insurable value and with loss payable to Shell, against [loss by fire]."

As one ground for finding no liability the referee construed the word "premises" in the sentence immediately above-quoted to refer not only to the new gasoline station to be built by Shell but also to the existing service station. He concluded that since Shell thus had the obligation, as well as exclusive entitlement, to insure *all* of the property covered by plaintiffs' fire insurance policy with defendant, plaintiffs' insurable interest in that property had been terminated.

As a second point to support his conclusion that plaintiffs lacked insurable interest in the property insured by plaintiffs' policy with defendant, the referee relied on the provision in the policy insuring

"to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property . . nor in any event for more than the interest of the insured, against all direct loss by fire . . . ."

Finding that plaintiffs had demonstrated no actual loss, the referee concluded that the "actual cash value" of plaintiffs' "interest" in the property was zero and thus plaintiffs lacked insurable interest.

1.

We address, first, the referee's conclusion that plaintiffs' insurable interest was terminated by the clause of the lease obligating, and exclusively entitling, Shell to insure the property covered by plaintiffs' fire insurance policy with defendant. We disagree with this conclusion because we disagree with the premise which underlies it:—that defendant insurance company may avail itself of the terms of a collateral contract between plaintiffs and a third person to destroy plaintiffs' insurable interest in property insured under a contract of insurance between plaintiffs and defendant.

 The existence of an insured's insurable interest in property covered by a contract of insurance is determined by the relationship between the insured and the property insured—more specifically, by whether there is a relationship such that injury to the property will, as a natural consequence, result in a loss to the insured. *Getchell v. Mercantile and Manufacturer's Mutual Fire Insurance Co.*, 109 Me. 274, 83 A. 801 (1912). Since the question of insurable interest thus necessarily involves the insured's relationship to the property in-

sured, we conclude that even if plaintiffs had purported by an executory contract to give a third person exclusive entitlement to place insurance on property already insured by plaintiffs, that fact is not by itself sufficient to terminate plaintiffs' insurable interest in the insured property.[1] Plaintiffs had not, here, made an actual transfer of such of their rights in the insured property as would destroy their insurable interest; the mere leasing of property is not such an alienation of it as destroys insurable interest. Cf. *Lane v. Maine Mutual Fire Insurance Co.*, 12 Me. 44 (1835). This being so, defendant insurance company may not treat the "exclusive right to insure" provisions in the lease with Shell as a waiver or surrender by plaintiffs, capable of redounding to the benefit of defendant insurance company, of plaintiffs' insurable interest in the property they had insured with defendant. The insurer simply cannot thus benefit from collateral contractual relations between the insured and a third person so long as the insured retains legal title to the property.

### 2.

We turn to the referee's other rationale of decision: that plaintiffs lacked insurable interest because the fire caused them no actual loss.

We take as settled principles of law in Maine that (1) insurable interest signifies such a relationship to property "as will necessarily entail a pecuniary loss in case of its injury of destruction." *Getchell v. Mercantile and Manufacturer's Mutual Fire Insurance Co.*, supra, 109 Me., at 277, 83 A. at 802, and (2) the term "actual cash value" in the fire insurance policy signifies the fair market value of the insured property, as measured by the usual test of what a willing buyer would offer and a willing seller accept in a cash sale on an open and free market. *Forer v. Quincy Mutual Fire Insurance Co.*, Me., 295 A.2d 247 (1972)

Under the plain language of the instant policy (in accordance with Maine's standard form of fire insurance policy), the actual cash value of the insured property is its fair market value *as of the time of its destruction by fire.* True, particular circumstances might render a building utterly worthless by the time fire consumes it; for example, if the process of demolition has been commenced, or if the owner has abandoned the building. See *Garcy Corp. v. Home Insurance Co.*, 353 F.Supp. 329 (N.D. Ill.E.D.1973), rev'd, 496 F.2d 479 (7th Cir. 1974); *Royal Insurance Co. v. Sisters of the Presentation*, 430 F.2d 759 (9th Cir. 1970); *Aetna State Bank v. Maryland Casualty Co.*, 345 F.Supp. 903 (N.D.Ill.E.D.1972). If, however, the building has not been "irrevocably committed to demolition or abandoned", the insured retains an insurable interest. See *Chicago Title & Trust Co. v. United States Fidelity & Guaranty Co.*, 511 F.2d 241 (7th Cir. 1975). And the mere existence of an executory contract for demolition does not destroy the value of the building or deprive the owner of an insurable interest. See *Eagle Square Manufacturing Co. v. Vermont Mutual Fire Insurance Co.*, 125 Vt. 221, 212 A.2d 636 (1965).

These principles have *a fortiori* application, here. Plaintiffs continued to have legal title to the property they had insured with defendant and thus had rights to recover damages in the event Shell should commit a breach of the lease and demolition

---

1. We may note that we disagree, in any event, with the referee's contractual interpretation that the "exclusive right to insure" provision of the lease had applicability to the insuring of the service station already in existence. The lease agreement does not specify whether the term "premises" refers only to the old premises or to the new premises or to both. The location of the insurance clause in the lease as an attachment in conjunction with several other special provisions directed to the construction of the new service station by Shell suggests that the term "premises", at least with respect to Shell's exclusive right and obligation to insure, refers only to the new service station premises. This conclusion also draws support from certain parol circumstances surrounding the lease agreement. The conduct of the parties— Shell's failure to place any insurance on the old premises and plaintiffs' failure to cancel their existing insurance thereon—objectively indicates that the parties intended the term "premises" to refer only to the new building.

agreement. Moreover, special circumstances existed here tending to show affirmatively that the building was not worthless at the time of the fire. Plaintiff Dolard Gendron was still operating the gasoline service station as a sub-lessee, and under a separate contract with Shell plaintiffs had retained rights to the salvage value of the old station, potentially valued at approximately $10,000.00, intending to use the materials to build another garage at another location.

Lastly, that plaintiffs had the benefit of Shell's contractual obligation to build a new service station to replace the old structure cannot support defendant's assertion that thereby plaintiffs lost an insurable interest. An insured's entitlement to be compensated for the value of insured property from sources other than the insurance does not destroy insurable interest of the insured in the insured property. *Dubin Paper Co. v. Insurance Company of North America*, 361 Pa. 68, 63 A.2d 85 (1949).[2]

The decision that plaintiffs lacked an insurable interest was error.

### 3.

Going beyond the rationale of the referee, defendant now asserts, for the first time in the course of this case, an independent ground of defendant's non-liability. Defendant says that plaintiffs failed to notify defendant of the lease and the other agreements they executed with Shell and, therefore, as a matter of law, must suffer the consequence prescribed by the policy that:

> "This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

2. We express no opinion whether Shell's contractual obligation to demolish the existing structure and replace it is relevant to the issue of damages. Compare *American Insurance Co.*

We will not address the merits of this claim. Defendant is barred from raising it as a defense because defendant omitted affirmatively to plead fraud by plaintiffs or a breach by plaintiffs of the above-stated policy condition concerning willful concealment or misrepresentation. 14 M.R.S.A. § 51; Rule 8(c) M.R.Civ.P.; *Connellan v. Casualty Co.*, 134 Me. 104, 182 A. 13 (1935); *Russell v. Fire Insurance Company*, 121 Me. 248, 116 A. 554 (1922).

The entry is:

Appeal sustained; judgment for defendant set aside; case remanded to the Superior Court for further proceedings consistent with the opinion herein.

*v. Treasurer, School District No. 37*, 273 F.2d 757 (10th Cir. 1959), with *Eagle Square Manufacturing Co. v. Vermont Mutual Fire Insurance Co.*, 125 Vt. 221, 212 A.2d 636 (1965).